W. A. DUNN, Receiver, v. A. F. JOHNSON.

*Insolvent   Corporation—Cashier—Trustee—Corporate   Funds— Breach of  Trust—Bill  for an  Accounting.*

1.  Where an agent is intrusted with money to be disbursed, his principal may sustain a bill in equity against him for an account of his agency, and under our present system of practice, in which legal and equitable relief may be demanded in the same action, a cashier of an insolvent bank may, in an action by the Receiver to recover an alleged balance in his hands, be held to an accounting, an account being necessary to ascertain the amount of said balance, if any.

2.  In an action by the Receiver against the former cashier of an insolvent banking association, the complaint alleges that defendant in the course of his agency received into his possession of the funds of the association a certain amount, and that he accounted for and turned over to his successor a smaller amount, and that demand has been made upon him for the balance which he has failed to turn over to the Receiver: *Held,* that the complaint states a cause of action in the nature of *indebitatus assumpsit,* in which it is not necessary to state the particular items constituting the debt.

CIVIL ACTION, heard on complaint and demurrer before *Brown, J.,* at February Term, 1894, of SAMPSON Superior Court.

The amended complaint was as follows :

" 1.  That on the 28th day of September, 1871, the plaintiffs, other than W. A. Dunn, receiver, and the Clinton Loan Association (incorporated), and the defendant A. F. Johnson

formed an association under the name of the Clinton Loan Association, under articles of agreement, a copy of which is hereto attached and made a part of this complaint.

" 2. That on or about the 1st day of October, 1873, the defendant A. F. Johnson was elected cashier of said association under said articles of agreement, and entered upon the discharge of the duties of said office, and continuously thereafter exercised and discharged the duties of said office until the 28th day of May, when he resigned.

" 3. That by virtue of his said office of cashier said defendant came into the possession of all the moneys, notes, accounts, mortgages, books and property of said Association.

" 4. That at or about the time of the resignation of said office by the defendant, said defendant turned over to his successor in office a part of the money and property that he took possession of by virtue of his said office of cashier, but he wrongfully failed and neglected to turn over and account for moneys and property of said Association in his possession, of the value of over fifty-two thousand dollars, as plaintiffs are informed and believe, and converted the same to his own use.

" 5. That the value of the money and property so taken possession of by the defendant, during his term of office, was about $275,735.72, and the amount paid out by him and the total of the assets, nominal and otherwise, turned over to his successor was about $223,586.15.

" 6. That the sources of information of the plaintiffs are principally the books of said Clinton Loan Association, made and kept by the defendant during his said term of office, and said plaintiffs are unable to state from said books at what time and in what amounts the defendant misappropriated or lost the property of said Association.

" 7. That the defendant fraudulently misappropriated the funds of said Association during a long period of time, and in his reports to the board of directors fraudulently concealed

the real condition of the business from them, and the deficit was never discovered till after he ceased to be cashier.

"8. That an account is necessary in order to ascertain the exact amount of the liability of the defendant to the plaintiffs. The taking of said account involves the examination of all the books and accounts kept by the defendant during his term of office, and the said liability cannot be ascertained without the taking of such account, which is a work of great magnitude and great labor.

"9. That the plaintiffs are unable to make the several allegations in this their amended complaint more specific, and to require this to be done will be to deprive the plaintiffs of the right and opportunity to prosecute their action and to call the defendant to an accounting.

"10. That plaintiffs have demanded a settlement of said defendant, which has been refused.

"11. That on or about the 18th day of March, 1891, the plaintiff, the Clinton Loan Association (incorporated), was duly organized under an act of the General Assembly of North Carolina, and ratified on the 14th day of February, 1891.

"12. That on the -- day of ------, 1891, all the property, rights and credits of the said Association formed on the 28th day of September, 1871, were duly transferred and assigned to the plaintiff corporation.

"13. That on the 22d day of December, 1891, in an action pending in the Superior Court of Wake County, wherein Donald W. Bain, State Treasurer, and the State of North Carolina on the relation of Donald W. Bain, State Treasurer, are plaintiffs, and The Clinton Loan Association is defendant, the plaintiff W. A. Dunn was appointed receiver of said corporation and said Association."

Wherefore, the plaintiffs demand judgment—

1. For an account and settlement of the defendant's receipts and disbursements and dealings as such cashier.

2. For $52,149.57, or such other amounts as may be ascertained by said accounting.

3. For such other and further relief as may be just and proper, and for costs.

The plaintiffs, for an amendment to their complaint, alleged—

"1. That the defendant, while acting as such cashier, received from exchange, discounts, collections, premiums and bank dividends the amounts and at the time set out in the paper hereto attached, marked 'A A,' and that he received upon the capital stock $47,860, a large part of which was turned over to him upon election as cashier, and the balance soon thereafter.

"2. That at the time of the resignation of the defendant there were outstanding certificates of deposits issued by said defendant to the amount of $110,978.47, a list of which certificates is hereto attached, marked 'B B,' which amount was received by the defendant as cashier.

"3. That at the time of the resignation of said defendant there were outstanding deposits, subject to check, amounting to $20,863.76, a list of which deposits is hereto attached, marked 'C C,' which amount was received by the defendant as cashier.

"4. That while acting as such cashier the defendant paid out, on account of dividends, general expenses and interest, the amounts, and at the time set out in the account hereto attached, marked 'D. D.'

"5. That at the time of the resignation of the defendant he delivered to his successor in office notes, secured by mortgage, amounting to $59,178.01, and notes not secured amounting to $64,379.04 and about $9,000 in cash, and said notes embrace all evidences of debt, solvent or otherwise, so turned over.

"6. That at the time of the resignation of the defendant

he failed to turn over to his successor any book or paper showing his cash account as cashier, and the plaintiffs, after diligent inquiry and investigation, have been unable to find such accounts, and said defendant kept no complete and accurate account of time deposits, and the plaintiffs are unable to state the balances due from year to year by the defendant, and at what times the funds of the plaintiffs were misappropriated by the defendant. The amount of outstanding certificates stated in paragraph 2 has been ascertained from the certificates presented by the holders thereof since said resignation, and not from the books.

"Wherefore, the plaintiffs pray judgment as prayed for in their amended complaint."

The defendant moved that the plaintiffs be required to make the allegations of their amended complaint more definite and certain, upon the ground that the same are so indefinite and uncertain that the defendant cannot be and is not advised thereby of the precise nature of the charges brought against him, and cannot intelligently defend the same.

"1. That the complaint does not state what specific property came into the possession of the defendant, nor the value of the same, nor the times when the same came into his possession. That it does not state what amount of money came into his possession, nor the times when it so came into his possession. That it does not state what specific property, nor the value of the same, that defendant converted to his own use, nor when he converted the same; and that it does not state what amount of money defendant converted to his own use, nor the time when he converted the same, nor the manner of such conversion.

"2. That while the plaintiffs allege that the defendant, during a long period of time, fraudulently misappropriated the funds of said Association, and in his reports to the directors fraudulently concealed the real condition of the busi-

ness from them, yet it does not state any specific act of fraud, or of fraudulent misappropriation, or any facts going to show fraud. Nor does it state wherein or how he fraudulently concealed, by his reports, the real condition of the business from the directors, or state any facts going to show any fraudulent concealment in or by such reports, or that he ever made any such reports.

"Defendant further moves that plaintiffs be required to furnish him a bill of particulars showing separately the specific property and the specific moneys which they allege the defendant converted to his own use, and also the value of such property, the amount of such moneys, and the several and various times when the same was so converted by the defendant."

The defendant moved that the plaintiff be required to make his amended complaint more definite and certain, upon the grounds—

"1. That the plaintiff has filed an amended complaint and separate amendments to the same, and by reason of the fact that said amendments are not incorporated into the body of said amended complaint so as to constitute but one pleading this defendant is at a loss and unable to answer the same intelligently, or to know to what allegations of the amended complaint amendments apply or how they are connected therewith.

"2. That it does not allege any specific money or property converted by defendant to his own use, or any specific act or acts of conversion, or the time or times of such conversion.

"3. That it does not allege any specific money or property fraudulently misappropriated by the defendant, or any specific act or acts of fraudulent misappropriation, or the time or times of such fraudulent misappropriation.

"4. That it does not state or allege any specific facts or circumstances tending to show any fraud or fraudulent misappropriation on the part of the defendant.

DUNN *v.* JOHNSON.

"5. That while the amended complaint alleges in one article a wrongful conversion of moneys and property of said Association, it yet alleges in another article a fraudulent misappropriation of moneys and property, and does not state specifically what money or property was so wrongfully converted by defendant, nor what money or property was so fraudulently misappropriated by defendant.

"6. That the schedules annexed to the amendments to the complaint are unintelligible.

"7. That the amended complaint and the amendments to same are so indefinite and uncertain in their allegations that this defendant cannot be advised as to the charge or charges brought against him, or how to make a sufficient or intelligent defense or answer to the same, and that he cannot, without serious prejudice, answer the same."

His Honor rendered the following judgment:

"The defendant moved in this cause before me in writing to require the plaintiffs to make their complaint more specific.

"The plaintiffs contend that they are unable to make the complaint more specific, and that if it is required of them they will be compelled to suffer a nonsuit.

"Defendant also demurs *ore tenis* to the complaint because it does not state a sufficient cause of action, upon the ground that an action or bill for an accounting will not lie against the defendant.

"It is specifically alleged that the defendant fraudulently misappropriated the funds of the said Clinton Loan Association during a long period of time, and in his reports to the directors fraudulently concealed the real condition of the business from them.

"Amended complaint alleges that according to the Constitution of the Association, which is made a part of the complaint, the cashier shall receive and hold, subject to the board of directors, all moneys, notes and mortgages, bonds, policies of insurance, deeds and other valuables belonging to the Association.

" It is contended that defendant is not liable to an accounting, because he held subject to the paramount authority of the directors. If he disposed of the moneys and other property under such authority he may, in defence, show the orders of the board.

" I am of opinion that an account should be taken, and that the complaint states a cause of action."

Motion denied and demurrer overruled, and defendant appealed.

*Mr. Robert O. Burton,* for plaintiff.
*Mr. George Rountree,* for defendant (appellant).

MacRae, J.: The defendant was cashier of a joint stock company, a copartnership doing a banking business. *Faison* v. *Stewart,* 112 N. C., 332; *Bain* v. *Loan Association, ibid.,* 248; *Hanstein* v. *Johnson, ibid.,* 253. By its articles of agreement, styled " The Constitution of the Clinton Loan Association," the duties of defendant as cashier were defined: " The cashier shall receive and hold subject to the order of the board of directors, all moneys, notes, mortgages, bonds, policies of insurance, deeds and other valuables belonging to the Association." And by a further provision, " The board of directors, or any three of them, together with the cashier, shall constitute a finance committee, whose duty shall be to loan, invest and collect the moneys and other securities of the Association, as defined in the constitution and by-laws."

It will appear from the above quotations that the cashier, while he may not have been invested alone with all the powers generally delegated to cashiers of banks, was the custodian of all the funds, securities and effects of the Association, " subject to the order of the board of directors." He occupied the relation of a fiduciary while a member of the copartnership; he was also its servant and agent. The reception of its effects constituted him not simply a debtor; he

had no separate authority to disburse, but was bound to pay over on request or order; and it was also provided that he should give bond for the faithful performance of his duties. It was not a case of deposit, like a bank or its depositor, where the bank could mingle the funds with its own and use the same until drawn out, and it was in no sense a loan, as in *Hervey* v. *Devereux*, 72 N. C., 463. It was clearly akin to a pure trust. " The relation of trust between the bank and cashier gives equity jurisdiction to compel an account for money misappropriated or other breach of trust." 1 Morse on Banking, § 173.

The gravamen of the charge here is that the defendant, as cashier, received into his possession all the moneys, notes, etc., of the Association, and failed and neglected to account for a part of the same, but converted and fraudulently misappropriated it. The necessity of an account is set out in order that the true liability may be ascertained.

We have been impressed with the very interesting and ingenious argument of the learned counsel for defendant, to the effect that the defendant was neither bailiff, guardian nor receiver, and that consequently the old and now obsolete action of account would not lie against him. Without undertaking to decide whether this be so or not, we are entirely satisfied that a bill in equity for an account would be sustained, for, " where an agent is entrusted with money to be disbursed, his principal may sustain a bill against him for an account of his agency, and, in some instances, although no discovery is sought. Adams' Eq., 321, note; *McCaskill* v. *McBride*, 2 Dev. Eq., 265. And we think it clear that, under our present practice, in which legal and equitable relief may be demanded and obtained in the one form of action, this defendant may be held to account, the action being to recover a balance alleged to be in the hands of defendant, and an account being necessary to ascertain the amount of said balance, if there be any. The old bill of discovery is dispensed

115—17

with, but the law affords better facilities for reaching the desired end than was provided in the distinct equity system once in practice. *Code*, § 579 *et seq.* Old forms have been done away with, but principles of substantial justice ever remain.

The Association became incorporated; the corporation succeeded to its rights and liabilities, and becoming insolvent a receiver was appointed to take charge of and administer the assets. This action is not brought by a creditor, but it is the receiver who seeks through this means to secure the effects of the insolvent corporation for the benefit of all parties in interest and have distribution according to law. *The Code*, § 668 *et seq.* His allegation is, in substance, that those assets have been wasted by the defendant who had them in charge. If the defendant failed to turn over the property entrusted to him, he might have been sued by the Association or its successor, the corporation. While one copartner had no action at law against another to recover the partnership property to which each had equal title, the equitable jurisdiction to compass a dissolution of the partnership and the administration of its effects has always existed. 1 *Story Eq. Jur.*, § 463; *Marvin* v. *Brooks*, 94 N. Y., at page 81. This corporation having succeeded to the rights of the copartnership is now in liquidation under our statute, and being under the control of the Court no one else can collect its assets but the receiver. Among its assets is this claim against the cashier of the copartnership association. If said cashier has not fully accounted for the property which came into his hands, the only remedy left is an action by the receiver against the cashier. If there were any ascertained balance in his hands there would be no necessity for an account, but the plaintiff, a receiver, alleges that a long account is necessary to enable the Court to ascertain the sum for which judgment should be rendered against the defendant. Section 421 of *The Code* provides for a reference to

state an account.   If upon the taking of such account before a referee it should be found that defendant has had in his possession property of the Association, and has not paid over the same to his successor, the opportunity is then offered the defendant to discharge himself of all liability by showing that such property has been disposed of by him by order of the directors, or has been dissipated in any way other than by his neglect or default.

It is further contended by the defendant that the complaint as amended is too vague and uncertain to require an answer. We reiterate what has more than once been said, that *The Code* has by no means dispensed with that certainty and regularity in pleading which is essential to every system adopted for the administration of justice.   *Rowland* v. *Windley*, 82 N. C., 131.   And that now, as in the old equity practice, " there should be such certainty in the averment of the title upon which the bill is found, that the defendant may be distinctly informed of the nature of the case which he is called upon to meet" (*Story Eq. Pl.*, § 241), that a charge of fraud in general terms is insufficient, and that to open a settled account specific errors should be pointed out.   But if we should reject the charge of fraudulent misappropriation of the funds of the Association, we still have the distinct allegation that defendant, in the course of his agency, received into his possession, of the funds of the Association now represented by the receiver, a certain amount, and that he accounted for and turned over to his successor a less amount; that a demand has been made upon him for the balance which went into his hands, and that he has failed to pay over the same to the receiver.

Here is the foundation for an action in the nature of an *indebitatus assumpsit,* upon an account stated, in which action it is not necessary to state the particular items constituting the debt.   1 *Selwyn Nisi Prius,* 68.   And *The Code,* as we have seen, provides the means for discovery and the state-

ment of an account to ascertain the balance in the hands of the defendant, if any there be. *Marvin* v. *Brooks, supra.* Neither is there necessity in equitable proceedings of this character, if we look at it in the light of a bill for discovery and account, to state with precision each item of the balance claimed, for in such case there would be no necessity for a discovery or an accounting.

It may be proper, however, to remark that every material fact to which the plaintiff means to offer evidence ought to be distinctly stated in the premises, for otherwise he will not be permitted to offer or require any evidence of such fact. A general charge or statement, however, of the matter of fact is sufficient, and it is not necessary to charge. minutely all the circumstances which may conduce to prove the general charge, for these circumstances are properly matters of evidence which need not be charged in order to let them in as proofs. *Story Eq. Pl.,* § 28. Affirmed.